UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRY P., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF SOCIAL <br> SECURITY,[1] <br><br> Defendant. | No. 19 CV 03107 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Harry P. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court grants Plaintiff's motion for summary judgment [23],[2] denies the Commissioner's motion for summary judgment [30], reverses the SSA's decision, and remands this case for further proceedings.

**Procedural Background**

Plaintiff applied for disability insurance benefits on May 2, 2016, alleging a disability onset date of May 1, 2016. [12-4] 112-113. The claim was denied initially and on reconsideration. [*Id.*] 129, 147. Plaintiff requested a hearing, which was held

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. However, citations to the administrative record [12] refer to the page number in the bottom right corner of each page.

by an ALJ on October 5, 2017. [12-3] 49-98. In a decision dated May 18, 2018, the ALJ found that plaintiff was not disabled. [*Id.*] 29-42. The Appeals Council denied review on March 12, 2019 [*id.*] 1-8, making the ALJ's decision the final agency decision. This Court has jurisdiction to review the SSA's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

---

[3] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [10].

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted); *see also Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("When an ALJ recommends that the agency deny benefits, it must first 'build an accurate and logical bridge from the evidence to the conclusion.'") (internal citation omitted).

## Discussion

Plaintiff, who was 42 years old on his alleged onset date, *see* [12-4] 112, sought disability benefits based on his chronic back and radiating leg pain, bipolar disorder, heart problems, chronic fatigue, and bilateral hand/wrist pain and numbness. [*Id.*] 118.

At step one of her written decision rejecting plaintiff's claim, the ALJ found that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. [12-3] 31. At step two, the ALJ found that plaintiff had seven severe impairments: cervical, thoracic, and lumbar degenerative disc disease, left shoulder osteoarthritis, bilateral carpal tunnel syndrome, aortic valve disease, obesity,

affective disorder, and anxiety disorder. [*Id.*]. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any listed impairment. [*Id.*] 32-35. Regarding the paragraph B criteria for Listing 12.04, which governs depressive, bipolar, and related disorders, and Listing 12.06, which governs anxiety and obsessive-compulsive disorders, the ALJ found that Plaintiff had "moderate limitations" in his "ability to concentrate, persist, or maintain pace," and in "interacting with others." [*Id.*] 33. The ALJ then explained that:

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

[*Id.*] 35.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the requirements of light work, as defined in 20 C.F.R. § 416.967(b), with certain additional limitations. [*Id.*]. Notably, the ALJ found that Plaintiff should be "limited to performing simple, routine tasks requiring simple work-related decisions," and that he could "have occasional interaction with supervisors, coworkers, and the public," but that he "could not interact with more than 5-to-10 people at a time in a public setting and could not do any tandem tasks with coworkers." [*Id.*]. The ALJ also noted that she had "concluded the claimant was moderately limited in social functioning and sustaining concentration, persistence, and pace, which supports limitation to simple work." [*Id.*] 40.

4

At step four, the ALJ found that Plaintiff had no past relevant work. [*Id.*] 41. Finally, at step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform: bench assembler, inspector, packer. [*Id.*] 41-42. Accordingly, the ALJ found that Plaintiff was not disabled. [*Id.*] 42.

Plaintiff argues that the SSA's decision should be reversed and remanded because (1) the ALJ failed to adequately assess the opinion of one of his treating physicians, Dr. Kelly DeBoer, M.D.; (2) the ALJ's RFC determination–and the corresponding hypothetical question that she posed to the vocational expert (VE) at the hearing–failed to account for Plaintiff's moderate limitations in concentration, persistence, or pace, and his inability to handle stress; and (3) the ALJ's credibility assessment of Plaintiff's subjective symptom allegations was patently wrong. [24] 10-15. After careful review of the parties' briefing, the ALJ's opinion, and the administrative record, the Court agrees with Plaintiff that the ALJ's RFC determination failed to incorporate his moderate limitations in concentration, persistence, or pace. The Court also agrees that the hypothetical questions that the ALJ posed to the VE did not capture all of these limitations. Consequently, the Court concludes that the Commissioner's decision must be reversed.[4]

### A. The RFC Did Not Account for Plaintiff's Moderate Limitations in Concentration, Persistence, or Pace.

Plaintiff argues that the ALJ committed a reversable error in her RFC assessment, because the limitation to "simple, routine tasks requiring simple work-

---

[4] Given the Court's ruling on this issue, the Court need not address Plaintiff's other arguments for reversing the SSA's decision.

related decisions" does not adequately take into consideration his moderate limitations in concentration, persistence, or pace. [24] 13. The Court agrees.

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Additionally, a disability claimant's ability to maintain concentration, persistence, or pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00C(3). The ALJ's RFC finding "must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). Although the ALJ's RFC assessment "need not recite the precise phrase 'concentration, persistence, or pace,' any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019).

Here, in her discussion at step 3 of whether Plaintiff's mental impairments met or equaled any listed impairment, the ALJ found that Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace. [12-3] 33. The ALJ's discussion in support of this finding is brief. The ALJ noted that Plaintiff had alleged limitations in concentrating, following instructions, and completing tasks, but

that he had also "admitted that he is able to drive, prepare meals, watch television, read, manage his finances, perform household chores, browse the Internet, hold telephone conversations, and handle his own medical care." [*Id.*]. Further, the ALJ found that the "record demonstrates the [Plaintiff's] ability to maintain appropriate attention and concentration during testing, relate during examinations, recall information, perform simple calculations, and complete simple tasks." [*Id.*]. Thus, the ALJ concluded that the Plaintiff's "difficulties with maintaining concentration, persistence, and pace are no more than moderate." [*Id.*].

The ALJ's finding was consistent with the findings of two state agency psychological consultants, Dr. Howard Tin, Psy.D., and Dr. Leslie Fyans Ph.D., who reviewed Plaintiff's claim at the initial and reconsideration levels, respectively. [12-4] 124-126, 142-144. Each state consultant completed a Mental Residual Functional Capacity Assessment ("MRFC"), and each indicated their opinion that Plaintiff was "moderately limited" in his ability to "maintain attention and concentration for extended periods" and his ability to "carry out detailed instructions." [*Id.*]. The ALJ afforded "some weight" to the opinions of the state consultants, observing that she "similarly concluded the claimant was moderately limited in social functioning and sustaining concentration, persistence and pace." [12-3] 40.

At the end of her paragraph B analysis of Plaintiff's mental impairments, the ALJ included boilerplate language that her RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." [*Id.*] 35. However, the ALJ failed to incorporate Plaintiff's moderate

7

limitation in maintaining concentration, persistence and pace into her RFC, nor did she offer a reasoned explanation for omitting these limitations. To the contrary, the ALJ purported to accommodate the limitations stemming from Plaintiff's mental impairments by limiting plaintiff to "simple, routine tasks requiring simple work-related decisions." [*Id.*] 35. This was reversible error, however, because a limitation to performing simple work does not account for a claimant's moderately limited abilities in concentration, persistence, or pace.

"The Seventh Circuit has repeatedly found that requiring a claimant to perform only 'simple' work–whether in the form of tasks performed, judgments and decisions made, or instructions followed–does not account for moderate limitations in concentration, persistence, or pace." *Dula A. v. Saul*, No. 18 CV 4253, 2019 WL 3386998, at *5 (N.D. Ill. July 26, 2019). This is because "[t]he ability to stick with a given task over a sustained period of time"–that is, one's ability to concentrate, persist, or maintain pace–"is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. "A task can be simple, but a person with a poor attention span may still become distracted and stop working." *Mischler*, 766 F. App'x at 376. Thus, "[r]estricting a person to simple routine tasks, as the ALJ has done here, is unrelated to the question of whether an individual with . . . difficulties with concentration, persistence, and pace can perform such work." *Dula A.*, 2019 WL 3386998, at *6 (citing *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015))

8

In this case, the ALJ found that plaintiff had moderate limitations in concentration, persistence, or pace, as did both state agency consultants to whom the ALJ afforded some weight. But the ALJ did not incorporate those limitations into the RFC determination. Instead, the ALJ purported to accommodate plaintiff's moderate limitations in concentration, persistence, or pace by limiting plaintiff to "simple, routine tasks requiring simple work-related decisions." [12-3] 35. As the cases cited above make clear, however, such limitations do not adequately account for a claimant's limitations in concentration, persistence, or pace. *See Varga*, 794 F.3d at 814 (reversing ALJ's decision because limitation to "simple, routine, and repetitive tasks" did not account for plaintiff's limitations in concentration, persistence, or pace); *O'Connor-Spinner*, 627 F.3d at 620-21 (reversing ALJ's decision because limitation to "routine, repetitive tasks with simple instructions" did not account for plaintiff's limited abilities in concentration, persistence, or pace); *Dula A.*, 2019 WL 3386998, at *5-6 (collecting cases on this point); *see also Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (reversing Commissioner's decision because limitation to "simple work instructions" and "routine work" and ability to "exercise simple work place judgments" with "no more than occasional changes" did not account for plaintiff's moderate limitations in concentration, persistence, or pace).

In sum, the ALJ's RFC determination did not incorporate the totality of plaintiff's limitations. The RFC therefore lacks a substantial evidentiary basis, and the Commissioner's decision must be reversed.

**B. The ALJ's Hypotheticals to the VE Did Not Encompass Plaintiff's Limitations in Concentration, Persistence, or Pace.**

The ALJ's failure to incorporate plaintiff's moderate limitations in concentration, persistence, or pace tainted the hypothetical question that the ALJ posed to the VE. *See Paul*, 760 F. App'x at 465 (accepting argument that ALJ's failure to incorporate moderate limitations in concentration, persistence, or pace in RFC can "taint[ ]" hypothetical question posed to VE and VE's opinion as to number of jobs existing in national economy that plaintiff can perform).

At the hearing, the ALJ consulted a VE to determine whether jobs existed in the national economy that plaintiff was capable of performing. *See* [12-3] 90-96. The ALJ asked the VE to assume a claimant with the same age and education as Plaintiff and with the same physical RFC, *i.e.*, the ability to perform light work with certain additional physical limitations, and proceeded to question the VE about the kinds of jobs such a claimant could perform. [*Id.*]. 90-92 The VE responded that such an individual would be capable of performing three jobs that existed in the economy: bench assembler, inspector, and packer. [*Id.*] 91. After the initial question based on a claimant with the same physical RFC as Plaintiff, the ALJ added in the additional limitation that the individual "would be further limited to simple, routine tasks, simple work-related decisions, and occasional contact with supervisors, coworkers, and the public." [*Id.*]. The VE responded that an individual with those additional limitations would be able to perform the same three jobs. [*Id.*] 92, 94.

Nowhere did the ALJ ask the VE to consider Plaintiff's moderately limited abilities in concentration, persistence, or pace. The ALJ's phrasing of the hypothetical

10

question was thus reversible error because it did not orient the VE to plaintiff's moderate limitations in concentration, persistence, or pace, and the limitations identified by the ALJ–simple, routine tasks and simple work-related decisions–have nothing to do with maintaining concentration, persistence, or pace. *See Moreno*, 882 F.3d at 730 ("We have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks . . . adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.") (internal brackets and quotation marks omitted).

Under Seventh Circuit case law, an ALJ must "orient the VE to the totality of a claimant's limitations," and "[a]mong the limitations the VE must consider are deficiencies of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 619. "Again and again," the Seventh Circuit has "said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). The Seventh Circuit has also "made clear that in most cases employing terms like simple, repetitive tasks on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area." *Winsted*, 923 F.3d at 477 (internal quotation marks omitted). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' [a court] will not

11

assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Varga*, 794 F.3d at 814.

In questioning the VE in this case, the ALJ failed to include a limitation in plaintiff's ability to concentrate, persist, or maintain pace, and the limitations that the ALJ asked the VE to consider did not adequately capture plaintiff's limitations in this area. "As a result, the vocational expert's assessment of the jobs available to [plaintiff] necessarily is called into doubt, as is the ALJ's conclusion that [plaintiff] is not disabled under the Social Security Act." *Moreno*, 882 F.3d at 730.

### C. The Commissioner's Arguments in Response are Without Merit.

In the face of this well-established precedent that a limitation to "simple" or "routine" work in an RFC and hypothetical to a VE does not account for a moderate limitation to concentration, persistence, or pace, the Commissioner advances several arguments in an attempt to salvage the ALJ's decision. Each is without merit.

First, the Commissioner points the Court to three Seventh Circuit decisions where the Commissioner claims the Seventh Circuit upheld RFC findings similar to the one here, [31] 9 (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (2019); *Burmester v. Berryhill*, 920 F.3d 507, 508-09 (7th Cir. 2019); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019)). The Commissioner argues that in those cases the Seventh Circuit found similar RFC's limiting a claimant to simple, route work permissible where they "adequately account[ed] for the claimant's demonstrated psychological symptoms." [*Id.*]. The Commissioner goes on to assert that the ALJ's RFC determination here, similar to *Jozefyk*, *Dudley*, and *Burmester*, adequately

12

"encompassed" Plaintiff's moderate limitation in concentration, persistence, or pace. [*Id.*].

However, each of the cases relied upon by the Commissioner are factually distinguishable. As to *Jozefyk*, the Seventh Circuit has made clear in subsequent cases that *Jozefyk*'s holding was limited to the particular facts of that case, where the claimant failed to testify to any limitations in his ability to concentrate, and the objective medical record did not support any such limitations. *See Hall v. Saul,* No. 3:19-CV-354-PPS, 2020 WL 2507932, at *4 (N.D. Ind. May 15, 2020) (citing *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019) ("In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations."). Here, Plaintiff did testify specifically as to his issues with maintaining concentration [12-3] 78-79. Further, there is objective medical evidence in the record related to Plaintiff's mental conditions affecting his ability to maintain concentration, persistence, and pace. Specifically, the ALJ noted that the record included evidence that Plaintiff had sought individual therapy for his diagnosed bipolar disorder, depression, and anxiety, and that, as a result of his conditions, Plaintiff reported "difficulty comprehending, remembering, concentrating, completing tasks, and getting along with others." [*Id.*] 38 (internal citations omitted). Additionally, as noted above, the state agency psychological consultants who reviewed Plaintiff's claim at the initial and reconsideration levels both opined that Plaintiff had "difficulty carrying out detailed

13

instructions and maintaining attention and concentration for extended periods of time. [12-4] 124-126, 142-144]. *Jozefyk* is thus inapplicable here.

As to the Commissioner's reliance on *Dudley,* as Plaintiff points out that case is nonprecedential. [32] 5; *see also Steven T. L. v. Comm'r of Soc. Sec.,* No. 19-CV-570-DGW, 2019 WL 6250833, at *5 (S.D. Ill. Nov. 22, 2019). Regardless, *Dudley* is also factually distinguishable. There, the court noted that the claimant's "greatest limitations are stress- and panic-related," and found that the ALJ's RFC adequately addressed those stress-related limitations. *See Dudley*, 773 F. App'x at 842. Here however, there is no indication that Plaintiff's concentration, persistence, and pace issues arise solely from difficulty handling stress Rather, as Plaintiff points out in his reply brief, there is evidence in the record that Plaintiff's issues are more deep seeded, and result from his diagnosed bipolar disorder. [32] 5 (citing [12-12] 2577). *Dudley* thus does not compel a different result here. *See, e.g. Seals v. Saul*, No. 18 C 7738, 2020 WL 1689815, at *4 (N.D. Ill. Apr. 7, 2020) ("But even if *Dudley* were binding precedent, the case is distinguishable. Unlike in *Dudley*, plaintiff's limitations appear to stem from deeper problems than difficulties handling stress.").

The Commissioner's reliance on *Burmester* is also unavailing. In that case, the court held that the ALJ's use of language limiting the claimant to "simple, routine, repetitive tasks," was permissible, because the claimant's examining psychologist on whom the ALJ had relied had opined "that [she] had the ability to understand, remember and carry out simple instructions subject to physical limitations, that maintaining concentration and attention should be manageable[,] and that she

14

should be able to withstand routine work stress and adapt to typical job site changes." *Burmester*, 920 F.3d at 511 ("an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."). In other words, the ALJ's RFC formulation was allowable because the ALJ had relied on a examining medical expert who had made specific findings regarding the claimant's moderate limitations in concentration, persistence, and pace, and had "translated" those findings into an RFC.

However, where the examining psychologist in *Burmester* specifically opined on the claimants' ability to maintain concentration and attention, the examining psychologist here, Dr. Mark Langgut, Ph.D., offered no such opinions. Among his findings, Dr. Langgut opined that Plaintiff would have difficultly forming generalizations, understanding concepts, and overcoming his frustration when faced with certain tasks. [12-13] 3151-3152. He therefore concluded that Plaintiff "could not responsibly manage or direct any funds due to his display of poor judgment skills, and history of anger aggression and limited incite." [*Id.*]. The ALJ afforded "substantial weight" to Dr. Langgut's opinion as supporting "limiting the claimant to simple, routine tasks requiring simple work-related decision." [*Id.*] 39. But Dr. Langgut's opinion does not expressly discuss Plaintiff's ability to concentrate, or to maintain concentration over an extended period, thus his conclusion that Plaintiff "could not responsibility manage or direct funds" in no way accounts for Plaintiff's abilities in concentration, persistence, or pace. Further, the ALJ did not explain how her reliance on Dr. Langgut's opinion, and her corresponding limitation to simple

work, accounted for Plaintiff's moderate limitation in concentration, persistence, or pace. The circumstances are thus distinguishable from the manner in which the ALJ relied on the examining psychologist's opinion in *Burmester*.

The Commissioner nonetheless attempts to draw a further comparison to *Burmester* by pointing to the ALJ's reliance here of the opinions of the state agency reviewing consultants, Dr. Tin and Dr. Fyans. [31] 10-11. The Commissioner acknowledges that both consultants indicated that Plaintiff had "moderate limitations" in the "ability to maintain attention and concentration" in the worksheet portion of the MRFC form, but argues that the ALJ was not required to include those selections in her RFC verbatim. Instead, the Commissioner argues it was sufficient for the ALJ to rely on the "narrative" opinion sections of the MRFC form, where consultants "translated their worksheet findings into a narrative opinion that plaintiff could perform simple tasks, respond appropriately to changes in work settings, be aware of normal hazards, and travel in unfamiliar settings, but should have no public interaction." [*Id.*] 10 (citing [12-4] 126, 144). Referencing *Burmester*, the Commissioner argues that the ALJ's reliance on the state consultants "translation" of their opinions was sufficient. [*Id.*] (citing *Burmester*, 920 F. 3d at 511).

It is true that in the narrative portion of the MRFC form, both Dr. Tin and Dr. Fyans stated that Plaintiff "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, *however* [he] is capable of performing simple tasks." [12-4] 126, 144 (emphasis added). Further, in reference to the state consultants' opinions, the ALJ stated that she "similarly

16

concluded the claimant was moderately limited in social functioning and sustaining concentration, persistence, and pace, which supports limitation to simple work." [12-3] 39-40. The ALJ afforded the consultants' opinions "some weight," which could suggest at least some level of reliance on the consultants' narrative statements that Plaintiff is "capable of performing simple tasks."

But the mere fact that the state psychological consultants indicated Plaintiff was capable of performing simple tasks does not, on its own, excuse the ALJ from accounting for Plaintiff's moderate limitation in concentration, persistence, and pace. *See, e.g.*, *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) ("even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms."); *see also Merod v. Colvin*, No. 15-CV-559-CJP, 2016 WL 3916944, at *8 (S.D. Ill. July 20, 2016) ("plaintiff's limitations with concentration, persistence, or pace were not automatically taken care of because the state agency physicians indicated plaintiff could perform simple tasks"). The Seventh Circuit rejected a similar argument in *DeCamp*, and found that the ALJ's focus on the reviewing consultants "bottom-line conclusion" that the claimant was capable of performing unskilled work was an error, because the consultants had also marked in the worksheet that the claimant was moderately limited in concentration, persistence, and pace, and the ALJ should have apprised the VE those limitations. *See DeCamp,* 916 F.3d at 676 (citing *Yurt,* 758 F.3d at 859). The *Burmester* court specifically distinguished *DeCamp* on this point,

17

because in Burmester's case "there was no such checkbox indicating a moderate limitation, there was only the Statement of Work Capacity indicating that concentrating at work would be manageable." *Burmester*, 920 F.3d at 512.

The circumstances here are akin to *DeCamp,* not *Burmester*, and indeed courts in this Circuit have routinely rejected similar attempts by the Commissioner to save a deficient ALJ opinion by point to reviewing consultants' bottom-line conclusions. *See, e.g., Kenneth P. v. Saul*, No. 18-CV-3346, 2019 WL 4958245, at *10 (N.D. Ill. Oct. 8, 2019) (finding there is no "blanket rule that an ALJ need not accommodate the moderate limitations in concentration, persistence, or pace simply because a Section III narrative adequately translates the limitations into a mental RFC"); *Miller v. Saul,* No. 19-C-305, 2020 WL 1061785, at *8 (E.D. Wis. Mar. 4, 2020) (rejecting Commissioner's reliance on agency psychological consultants, commenting that "[t]his case is like *DeCamp*, not *Burmester*."); *James A. B. v. Comm'r of Soc. Sec.*, No. 18-CV-0814-CJP, 2019 WL 176174, at *7 (S.D. Ill. Jan. 11, 2019) ("neither the consultants nor the ALJ explained how a limitation to simple unskilled work accommodates moderate limitations in ability to maintain attention and concentration for extended periods.").

In sum, binding Seventh Circuit precedent required the ALJ to adequality account for Plaintiff's moderate limitations in concentration, persistence, or pace in both her RFC determination and in the hypothetical to the VE. This she failed to do, and the limited exceptions cited by the Commissioner are inapplicable. The decision must therefore be reversed.

## Conclusion

Plaintiff's motion for summary judgment [23] is granted, and the Commissioner's motion for summary judgment [30] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

*Heather K. McShain*
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 16, 2022**